**Keith GRIMES, Appellant**

v.

**The STATE of Texas, Appellee.**

Nos. 01–02–00817–CR to 01–02–00819–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 29, 2004.

L.T. "Butch" Bradt, The Teltschik Law Firm, Houston, TX, for Appellant.

Dan McCrory, Assistant District Attorney, William J. Delmore, III, Chief Prosecutor, Appellate Division, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Justices ALCALA, HANKS, and HEDGES.*

* The Honorable Adele Hedges, who became Chief Justice of the Fourteenth Court of Appeals on December 8, 2003, continues to participate by assignment for the disposition of this case, which was submitted on December 8, 2003.

## OPINION

ADELE HEDGES, Justice (Assigned).

In three separate indictments, appellant Keith Grimes was charged with the felony offenses of indecency with a child in cause number 873295 for touching the genitals of the child on or about February 6, 2001, aggravated sexual assault of a child in cause number 884017 for causing his sexual organ to penetrate the child's sexual organ on or about February 6, 2001, and aggravated sexual assault of a child in cause number 889126 for causing the child's sexual organ to contact his sexual organ on or about January 15, 2001. Appellant pleaded not guilty to a single jury who convicted him of all offenses alleged and sentenced him to two years' confinement for indecency with a child, fifteen years' confinement for the aggravated sexual assault of a child by penetration of the child's sexual organ, and five years' confinement for the aggravated sexual assault of a child by contacting the child's sexual organ with his sexual organ. The trial court ordered that the sentences run cumulatively. We affirm.

In fifteen issues, appellant complains (A) that the evidence is legally and factually insufficient (issues 5 and 12), (B) that affidavits and/or testimony offered by various witnesses concerning the DNA evidence and the credentials of the State's chief medical witness were perjurious (issues 1–4, 6, 13, and 15), (C) that the trial court abused its discretion in determining that appellant had forfeited his pretrial bond and by allowing evidence of the forfeiture to be admitted at trial (issue 7), (D) that the trial court abused its discretion in admitting evidence of appellant's October 1, 2001 suicide attempt (issue 8), (E) that the State failed to produce photographs and videotapes (issue 9), (F) that a statement

appellant made to a Houston Police Department (HPD) Officer was admitted in violation of his Fifth Amendment rights (issue 10), (G) that appellant was denied his right to a fair and impartial judge (issue 11), and (H) that the court erred in admitting and excluding certain evidence (issue 14).[1]

## Background

Appellant and his then 13–year–old biological daughter (the complainant) began an incestuous relationship in August of 2000. The complainant's mother, who took medication for Parkinson's Disease that often made her drowsy, regularly fell asleep on a couch in the family living room.

Appellant and the complainant began inappropriately touching one another, approximately two times per week, while lying on the couch in the family living room, usually while the complainant's mother was asleep on the other couch. The sexual relationship quickly escalated. The complainant regularly entered appellant's bedroom to join her father in bed in the morning after her mother left for work.

At trial, she testified regarding several sexual encounters with her father which occurred on the first, second, and sixth of February, 2001. Following the February 6, 2001 encounter, the complainant informed her school counselor that she might be pregnant, that her father was responsible for the suspected pregnancy, and that the incident giving rise to her fear had occurred that morning after her mother left for work. The counselor took the complainant to the authorities, who began an investigation of the complainant's allegations.

---

1. Appellant presents numerous issues in his brief, including new issues within other issues. Issues that are not appropriately before this Court for appellate review are waived. TEX.R.APP. P. 38.1(e), (h).

## Sufficiency of the Evidence

In his fifth and twelfth issues, appellant contends that the evidence is legally and factually insufficient to support his convictions in each of the three offenses. When conducting a legal-sufficiency review, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim. App.2000); *Howley v. State*, 943 S.W.2d 152, 155 (Tex.App.-Houston [1st Dist.] 1997, no pet.). Although a legal-sufficiency analysis entails a consideration of all evidence presented at trial, we may neither re-weigh the evidence nor substitute our judgment for the jury's. *King*, 29 S.W.3d at 562. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. *Obigbo v. State*, 6 S.W.3d 299, 304 (Tex.App.-Dallas 1999, pet. ref'd).

■ In a factual-sufficiency review, we take a neutral view of the evidence, both for and against the finding, to determine (1) if the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or (2) if the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *King*, 29 S.W.3d at 563. In our review, we must consider the most important evidence that the appellant claims undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003). It is within the exclusive purview of the jury to determine the credibility of witnesses and the weight to be given to their testimony. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim. App.2000). The jury's determination may be reversed only upon a finding that a manifest injustice has occurred. *King*, 29 S.W.3d at 563.

### The Charged Offenses

In cause number 873295, appellant was charged with committing the offense of indecency with a child by touching the genitals of the complainant, a person younger than seventeen years of age, on or about February 6, 2001, with intent to arouse his sexual desire. In cause number 884017, appellant was charged with committing the offense of aggravated sexual assault of a child by placing his sexual organ inside the sexual organ of the complainant, a person younger than fourteen years of age, on or about February 6, 2001. In cause number 889126, appellant was charged with committing the offense of aggravated sexual assault of a child by causing his sexual organ to contact the sexual organ of the complainant, a person younger than fourteen years of age, on or about January 15, 2001.

The complainant testified that her sexual relationship with appellant began in August of 2000, shortly after she reached thirteen years of age. On the morning of February 6, 2001, the complainant entered her parent's bedroom, and climbed into bed with appellant, who was naked. After climbing into bed with her father, the two engaged in "vaginal sex." The two engaged in sexual intercourse "[p]robably three times in total" during the course of their relationship. The prosecutor asked whether the complainant was referring to vaginal sex or whether she was referring to appellant rubbing his sexual organ on the outside of her sexual organ, and the complainant responded: "I am talking about penetration." On cross-examination, defense counsel asked the complainant: "[d]id your father ever place his sexual organ in your female organ?" The complainant responded affirmatively, and testified it occurred on February 6, 2001. On redirect, the complainant testified that although she was wearing shorts and panties

during the February 6, 2001 sexual intercourse, she recalled that her garments were pushed aside during the incident.

The complainant also testified that appellant contacted her sexual organ with his sexual organ on the first and second days of February, 2002, but had attempted to make her touch his sexual organ prior to that. When defense counsel asked whether the contact was inadvertent, the complainant responded that the contact was "deliberate."

Dr. Margaret McNeese, Medical Director for the Children's Assessment Center in Houston (CAC), testified that the complainant came to the CAC on February 6, 2001. She interviewed and physically examined the complainant. During the interview, McNeese asked the complainant whether appellant placed his sexual organ in her sexual organ, she responded "maybe." McNeese testified that any inaccurate or incomplete rendition of the complainant's account of what transpired is explained by the fact that an adolescent child typically minimizes or under-reports what they endure because of the shame they have, and their fear of testifying in court. When asked whether her examination revealed "clear definitive evidence of penetrating trauma" McNeese responded affirmatively, and testified that the most likely cause of the injuries she observed during the physical examination was from penile penetration. Dr. Girardet, Dr. Parks, and Dr. Lahoti reviewed Dr. McNeese's findings, and all agreed that the complainant suffered blunt penetrating trauma.[2] Both Dr. Parks and Dr. Lahoti testified at trial, and their testimony substantiated Dr. McNeese's testimony and conclusions.

While at the CAC on February 6, 2001, the complainant's panties were preserved for sampling. Audrey Timms, a forensic biologist employed by HPD's crime lab, testified that he tested samples from the complainant's panties for acid phosphatase and for the protein P–30. Both tests returned positive results. Timms testified that he was not aware of any substance that would cause a false positive for both tests, and therefore concluded that semen was present on the complainant's panties. Appellant's expert substantiated the conclusions reached by Bolding and Timms. Appellant's expert testified that, like Bolding and Timms, her laboratory would also conclude that seminal fluid was present in a sample if, upon analysis, the results of both the AP Test and P–30 Test were positive, even if no evidence of sperm could be located upon microscopic examination.

After moving to Kansas, the complainant became the patient of Faye Heller, an advanced registered nurse practitioner who specialized in the area of mental health. Heller testified that the symptoms exhibited by the complainant were consistent with a victim of child incest and that she believed that the complainant was the victim of abuse by her father.

Mary Proff, a counselor at the complainant's school, was the State's outcry witness.[3] The complainant informed her on February 6, 2001, that she thought she was pregnant, that her father was responsible for the suspected pregnancy, and that the incident giving rise to her fear oc-

---

2. Dr. McNeese testified that whenever peer review is conducted, the individual reviewing another's findings views photographs from the examination. The reviewing individual does not have access to the examiner's comments or conclusions, and, based upon their visual inspection of the photographs, the reviewer opines whether the photographs reveal evidence of blunt penetrating trauma.

3. See Tex.Code Crim. Proc. Ann. art. 38.072 (Vernon Supp.2004) (providing for the admissibility of certain hearsay statements made by a victimized child in a prosecution for various sexual or assaultive offenses).

curred that morning after her mother left for work. When asked by Proff whether there was penetration, the complainant responded: "Yes, sort of." Proff testified that she attributed any uncertainty in the complainant's response to her hesitancy to discuss the incident, as opposed to confusion whether the incident actually occurred.

Appellant attacks the inconsistencies in the complainant's testimony, the medical evidence, and erroneous use of the word "sperm" in Officer Ballard's probable cause affidavit. Appellant's argument is reproduced below as follows:[4]

> The complainant denies that anything happened before February 1. She denies that she ever had her clothes off. She denies that there was ever penetration by Keith's penis. She denies that anything happened on or about January 15, 2001. She states that the only time Keith had his clothes off was February 1, 2, and 6. *Nothing* has ever gone inside her reproductive organ. She testifies that she stuck her finger in her—many times.

> Dr. McNeese lies about her credentials. Dr. McNeese says there are transections at 5, 6, 7, 8, and 9:00 o'clock. Drs. Park and Lahoti only agree with the one at 9:00 o'clock. Dr. Guertin was denied access to the videotape or the opportunity to show the videotape to the jury to demonstrate what was actually there.

> Dr. McNeese says that this must have been a penis, then retracts, saying that she never said that it was a penis. She says it couldn't be a finger. Dr. Park says that it could be a finger, it could

> even be a bottle. Dr. Guertin says that we don't even know if there is a transection.

> Dr. McNeese testifies that you "never never turn a female upside down" to examine the hymen. This is contradicted by the article she co-authored and by Drs. Parks, Lahoti, and Guertin.

> Dr. McNeese relies upon the presence of semen as conclusive evidence of abuse. But there was no semen—because there was no sperm. And whether what was found was actually seminal fluid is unknown because of the now-known problems with the HPD Crime Lab and because [the complainant] was not tested to rule her out as the source of P–30.

> For an aggravated sexual assault that allegedly happened less than twelve hours before the examination, all doctors agree that there is no evidence of any bruising or any recent injury.

> Officer Ballard swears and testifies that "sperm was found and recovered" but it is uncontroverted that no sperm was ever found or recovered. Not even one sperm cell.

Appellant contends that the inconsistencies in the complainant's testimony concerning whether appellant penetrated her means that she is not credible. When describing how her sexual relationship with appellant evolved, she testified as follows: "Basically I would lie next to him and we'd start touching each other and it—as it moved it became more of a sexual nature as it increased I guess until there was vaginal sex." When the prosecutor asked for clarification regarding the mean-

---

4. Although it is not our duty to make an independent search of the record for evidence that supports appellant's position, because appellant provided citation to the record in his statement of facts, we review the evidence to determine whether it is legally and factually sufficient to support appellant's three convictions. *See* Tex.R.App. P. 38.9 (appellate courts are to liberally construe points of error to fairly and equitably adjudicate the merits of the case).

ing the complainant assigned to the term "vaginal sex" she responded: "I'm guessing penetration." During cross-examination, defense counsel asked the complainant: "Was there ever penetration?" The complainant responded: "I am not sure to this day." Another example of the complainant's inconsistent testimony occurred during cross-examination, when defense counsel asked the complainant the following: "To this day are you sure whether or not there is penetration or not?" The complainant responded as follows: "I am not positive but I do feel that there was. Yes." We conclude that any inconsistencies in her testimony were properly left for the jury to make the necessary credibility determinations.

Appellant further complains of Dr. McNeese's credentials and expert opinion because his expert disagreed with her findings. Dr. Guertin testified that he reviewed the photographs taken during the physical examination of the complainant, and disagreed with McNeese's conclusion that the photographs depicted definitive proof of penetrating trauma, and opined that, based on his review of the evidence, one could not conclude that there is actual evidence of sexual activity.

■ We conclude that the credibility of the experts and their opinions based on their physical findings was properly left for the jury's determination, and that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt; therefore, we conclude

that the evidence is legally sufficient to support appellant's three convictions. *See King*, 29 S.W.3d at 562. Furthermore, after a neutral view of the evidence both for and against the jury's finding, we have determined that the proof of guilt is not so obviously weak as to undermine our confidence in the jury's determination, and that the proof of guilt is not greatly outweighed by contrary proof. *See id.* at 563. Although the jury was presented with some inconsistent evidence, it was the jury's exclusive province to resolve those inconsistencies by making credibility determinations of the witnesses, and it is free to believe or disbelieve any portion of a witness' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). We therefore conclude that the evidence is factually sufficient to support the three convictions.[5]

We overrule appellant's fifth and twelfth issues.

## Perjury Concerning the DNA Evidence

Appellant complains of alleged perjury concerning DNA evidence in issues one, two, three, and four. In his first issue, appellant contends that (1) the probable cause affidavit executed by Officer Sharon Ballard contained the "perjurious" statement that "sperm was found and recovered" and (2) Officer Ballard offered "perjurious" testimony at trial consistent with her statement in the affidavit. In his second issue, appellant contends that Audrey Timms and Dr. Jim Bolding, employees of

---

5. Appellant also contends that the evidence is insufficient to support his conviction in cause number 889126 because "[s]he denies that anything happened on or about January 15, 2001." The State was not required to prove that the offense occurred on the date alleged in the indictment, as the "on or about" language of an indictment allows the State to prove that the alleged offense took place on a date other than the date alleged in the indictment as long as that date is anterior to the

presentment of the indictment and within the statutory limitation period. *Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex.Crim.App. 1997). *See also Thomas v. State*, 753 S.W.2d 688, 693 (Tex.Crim.App.1988) ("[w]here an indictment alleges that some relevant event transpired on or about a particular date, the accused is put on notice to prepare for proof that the event happened at any time within the statutory period of limitations.").

the HPD Crime Lab, committed perjury when they testified that semen was found on the complainant's panties. Moreover, appellant alleges his due process rights were violated by the State's prosecutor, who used the "perjurious" testimony without correcting it. In his third issue, appellant contends that Bolding committed perjury when he purportedly testified that the complainant did not suffer from any conditions that would cause the protein P–30 to be present in her body. In his fourth issue, appellant contends that James Bolding committed perjury when he testified in the State's case-in-chief that the protein P–30 is not found in women, but, on rebuttal, testified that in rare instances, the protein may be present in a woman's body. Appellant contends that this alleged perjury and the presentation of this alleged perjury by the State's attorneys deprived him of his constitutional rights of due process and due course of law, and constituted prosecutorial misconduct.

One commits perjury if, with intent to deceive and knowledge of the statement's meaning, "he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath." Tex. Pen.Code Ann. § 37.02(a) (Vernon 2003).

### Officer Ballard

■ Appellant's complaints concern the following statement contained in the probable cause affidavit: "A sexual assault kit was done on this date. Sperm was found and recovered."[6] At trial, Ballard testified that the statement in her affidavit was written by the district attorney, and that she swore to it. She also testified that she telephoned appellant and informed him that she had filed charges against him because semen had been

found in the rape kit. The record demonstrates that Officer Ballard used the terms semen and sperm interchangeably, as a lay person might do, rather than as a medical expert making a clinical distinction. From this record, we cannot conclude that Officer Ballard had any intent to deceive in connection with the misstatement contained in her affidavit or her testimony. See Gone v. State, 54 S.W.3d 27, 31 (Tex.App.-Texarkana 2001, pet. ref'd) (appellant's contention that police officer committed perjury rejected because, in context, no evidence was presented that supported a showing that testimony was false or that there was any intent to deceive in connection with the misstatement).

### Dr. Jim Bolding

■ During the State's case-in-chief, defense counsel cross-examined Dr. Bolding regarding prostatic specific antigen as follows:

Are you aware of any literature, Mr. Bolding, that indicates that the protein with [sic] the PS–30 reacts to is also found within certain bodily fluids on females?

Dr. Bolding responded: "I've not read that, sir." During the State's rebuttal, it called Dr. Bolding, who explained that he was aware of extremely rare occasions, in which "an elevated level of a certain protein in female urine" could cause a false positive result on the P–30 Test, and explained that he assumed in his previous response that he was being questioned about "a normal female" and that he answered defense counsel's question assuming that the hypothetical question concerned individuals who did not exhibit abnormal conditions. After Dr.

---

**6.** It is undisputed that the statement in Ballard's affidavit and her testimony was inaccurate.

Bolding testified that he understood defense counsel to be questioning him regarding a "normal" female when he gave his allegedly "perjurious" testimony, and, following clarification, he agreed that in rare circumstances, the protein P–30 may be found in the female body. Bolding's answer to the question concerning "certain bodily fluids on females" is insufficient to establish perjury because the question could plausibly be subject to Dr. Bolding's interpretation. We cannot conclude that the alleged discrepancy in Bolding's testimony constituted perjury at trial.

In his third issue, appellant contends that Bolding committed perjury by testifying that the complainant did not suffer from any condition that would cause the protein P–30 to be present in her body, and that the admission of this evidence deprived him of his constitutional rights of due process and due course of law. Appellant's brief does not, however, cite to any place in the record where Bolding testified that the complainant did not suffer from any conditions that would cause the protein P–30 to be present in her body. *See* TEX.R.APP. P. 38.1(h) (brief must contain appropriate citations to the record). Nor have we ourselves found such testimony. Because appellant's brief fails to conform with Rule 38.1, we overrule appellant's third point of error. *See* TEX.R.APP. P. 38.1(h).

### Audrey Timms

Appellant also complains of testimony given by Audrey Timms, but does not, in his argument, provide the Court with any citation to the record in support of his contention that Audrey Timms gave perjured testimony at trial. Appellant does, however, address the testimony in his statement of facts as follows:

> Timms testified that the "inside and outside crotch cuttings were both positive for semen." She knew of nothing

that could yield a false-positive on both the Anti–Phosphatase Test and the Anti P–30 test. [sic] Time can cause false positives on the Anti P–30 test and atmospheric conditions may interfere with the test. And any test can be run wrong.

> There was no doubt in her mind that semen is present. But [sic] she acknowledged that semen meant only seminal fluid, not sperm.

■ We are to liberally construe points of error to fairly and equitably adjudicate the merits of the case, and, thus, address appellant's argument concerning Timms' alleged perjury. *See* TEX.R.APP. P. 38.9.

■ We reject appellant's contention that he established that Audrey Timms gave perjured testimony at trial. Audrey Timms conducted both an Acid Phosphate Test (AP Test) and ABA Card P–30 Test (P–30 Test) on the complainant's panties, and both tests gave a positive result for semen. She testified that she was unaware of anything that would cause a false positive on *both* tests. After Timms testified that the results of *both* tests returned positive results, defense counsel asked: "And what did that indicate to you?" Timms responded, "Semen was present on the crotch of the panties." Timms acknowledged on cross-examination that certain atmospheric conditions could cause a false positive result on the P–30 Test, but emphasized that she was unaware of anything that would cause a false positive on *both* tests.

In her testimony, Timms admitted that the P–30 Test can give false results. Moreover, appellant's expert testified that if her laboratory had found positive results on the AP Test and the P–30 Test, she would have concluded seminal fluid was present in the sample, even if no evidence of sperm could be located upon microscopic examination.

We hold that appellant has failed to demonstrate that, by testifying that semen was found on the complainant's panties, Audrey Timms committed perjury, because appellant has not presented evidence that Timms made a false statement with intent to deceive. Appellant has failed to demonstrate that the DNA evidence from Ballard, Bolding, and Timms was perjured, and thus, appellant failed to establish prosecutorial misconduct by presenting the evidence.

We overrule appellant's first, second, and fourth issues.

### Dr. McNeese

█ In his sixth point of error, appellant contends Dr. McNeese committed perjury when she testified that she completed a fellowship in child abuse and neglect. Appellant further contends that the trial court erred when it refused to permit him to examine Dr. McNeese in the jury's presence regarding this alleged perjury, and when the court refused to allow testimony from Patricia McCarroll, the administrator for the Department of Medical Practice Administrator at the University of Texas Medical Branch (UTMB) as impeachment concerning McNeese's fellowship. Appellant contends that his due process rights were violated by the State's prosecutorial misconduct in presenting the evidence regarding McNeese's fellowship.

Appellant complains of the following testimony:

Well, after I finished my general pediatric training then [sic] as I said did[sic] a fellowship in child abuse and neglect at the University of Texas Medical Branch in Galveston for two years. During that time I published in the area of child abuse and have continued to do so since I've gone on to [sic] faculty in Houston.

* * *

I graduated from medical school in 1971 so I had an MD degree then and after that a residency in pediatrics which was three years and then when I finished pediatrics residency I did two years in child abuse neglect [sic] and at that time I left Galveston where I did [sic] medical school and training and came to the University of Texas at Houston where I've been on the faculty ever since.

Appellant contends that McNeese misrepresented her credentials, because her two-year fellowship at the UTMB was not actually called a fellowship in child abuse. As evidence that Dr. McNeese overstated her credentials, appellant directs us to prior testimony from Dr. McNeese, in Cause No. 87–37952 in the 129th Judicial District on June 7, 1988, wherein she testified that she did a fellowship in ambulatory pediatrics at UTMB in Galveston, as opposed to a fellowship in child abuse and neglect.

Three days after McNeese testified, defense counsel asked to call certain witnesses to testify before the jury regarding McNeese's prior testimony. Outside of the presence of the jury, defense counsel presented Patricia McCarroll, UTMB's Department of Medical Practice Administrator, who was questioned by the trial court as follows:

[The Court]: If the testimony—well would it be accurate or inaccurate for a person to testify that an ambulatory pediatric fellowship was a fellowship in child abuse and neglect?

[Witness]: It's my understanding that there is—that it is called ambulatory [sic] fellowship but their training consist [sic] of child abuse and neglect but at that particular time it wasn't called child abuse [sic] neglect.

[The Court]: So the name was ambulatory but the sequence was child abuse [sic] neglect.

[Witness]: Yes.

Defense counsel then examined the witness, who testified that Dr. McNeese did

not spend one hundred percent of the time during her fellowship focusing on child abuse and neglect.

Patricia McCarroll confirmed that, through her ambulatory fellowship, Dr. McNeese trained in child abuse and neglect. McCarroll's testimony was not in conflict with, or impeachment of, Dr. McNeese's testimony. Moreover, Dr. McNeese's descriptions of her fellowship are consistent with terms used to assist the trier of fact in understanding her qualifications, as a layperson would better understand the subject matter of one's training in a fellowship in abuse and neglect, as opposed to a fellowship in ambulatory pediatrics. The evidence presented by appellant does not demonstrate that McNeese made a false statement with intent to deceive. We hold that the evidence is insufficient to demonstrate that, by testifying that she did a two-year fellowship in child abuse and neglect, Dr. McNeese committed perjury. Furthermore, we conclude that the State's prosecutors did not commit prosecutorial misconduct by presenting Dr. McNeese's testimony. We overrule appellant's contentions concerning the perjury allegations in issue six.

### Limitation of Cross–Examination

■ Within his sixth issue, appellant alleges that the trial court abused its discretion by disallowing impeachment evidence from McCarroll and cross-examination of McNeese concerning her fellowship. We review the decision to exclude evidence for abuse of discretion. *Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles by acting arbitrarily or unreasonably. *Galliford v. State,* 101 S.W.3d 600, 604 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd).

The trial court examined McCarroll outside of the jury's presence to determine whether McNeese misrepresented her credentials. When the court asked whether it would be accurate to testify that an ambulatory pediatric fellowship was a fellowship in child abuse and neglect, McCarroll responded that, although the title of the fellowship was ambulatory, the training consisted of child abuse and neglect, and that at that particular time, the fellowship was simply not titled a child abuse and neglect fellowship. After considering this testimony, the State objected to its admission on the basis of relevance and improper impeachment. The court agreed, stating "It is not probative of any issue in this case. It will lead to confusion of the issues and it is just a waste of time." We are unable to conclude that the trial court acted without reference to any guiding rules and principles, and hold that the trial court did not abuse its discretion in refusing to allow appellant to examine McCarroll and McNeese before the jury regarding McNeese's two-year fellowship at UTMB. *See Galliford,* 101 S.W.3d at 604.

We overrule appellant's sixth issue.

### Denial of Motion for New Trial

In his thirteenth issue, appellant contends that the trial court erred when it denied his motion for new trial. Appellant contends that he was entitled to a new trial because of the alleged perjurious testimony he complains about in his first, second, third, fourth, and sixth issues. Appellant's thirteenth issue is, therefore, a restatement of these issues. Because we have concluded that those issues are without merit, we overrule appellant's thirteenth issue.

### Due Process

Appellant's fifteenth issue provides as follows:

Was false testimony presented by the State that ... in any reasonable likeli-

hood affected the judgment of the jury? If so, did this violate Keith's Due Process rights?

We have previously addressed appellant's perjury contentions in his first, second, third, fourth, and sixth issues and determined them to be without merit. Appellant has not complained of any other alleged instances of perjury, other than those mentioned in the previous issues on appeal.

We overrule appellant's fifteenth issue.

## Bond Forfeiture

In his seventh issue, appellant contends that the trial court abused its discretion when it forfeited his pretrial bond after he failed to appear at a court setting on October 5, 2001, and that the trial court erred in admitting evidence of his bond forfeiture. The State contends that we are without jurisdiction to consider appellant's seventh issue, because the appellate record does not indicate that appellant filed a notice of appeal from the forfeiture of his bond, and, alternatively, if we determine we have jurisdiction to consider the forfeiture proceeding, appellant has presented nothing for this Court to review because no record of the forfeiture proceeding is contained in the appellate record.

Appellant has not provided any citation to the record wherein he complains that the trial court erred in forfeiting his pretrial bond. We have located testimony *referencing* the forfeiture proceeding within the record, but have located no record of the *actual proceeding* to which appellant has assigned error. Texas Rule of Appellate Procedure 38.1(h) provides that the "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(h). This Court cannot consider an item that is not a part of the record on appeal. *Rasberry v. State*, 535 S.W.2d 871, 873 (Tex.Crim.App.1976). Because appellant has not provided any citation to the record wherein he complains that the trial court erred in forfeiting his pretrial bond, we hold that appellant has waived any error regarding the bond forfeiture. *Id.* We overrule appellant's contention that the trial court abused its discretion in forfeiting his pretrial bond.

Also within his seventh issue, appellant contends that the trial court erred by allowing the State to introduce testimony concerning the forfeiture of his pretrial bond. At trial, the court admitted evidence that appellant forfeited his bond for failure to appear on October 5, 2001.[7] On appeal, appellant contends that the prejudicial effect of the admission of this evidence outweighed its probative value.

In order to preserve error, appellant was required to present a timely objection that stated the grounds for the ruling that he sought with sufficient specificity to make the trial court aware of his complaint, unless the specific ground was apparent from the context. TEX.R.APP. P. 33.1. We hold that appellant waived any error, because appellant failed to object to this evidence when it was admitted at trial.

We overrule appellant's seventh issue.

## Appellant's Suicide Attempt

In his eighth issue, appellant contends that the trial court abused its discretion

---

7. Appellant filed a motion in limine seeking that the trial court order the prosecutor to refrain from introducing evidence of his bond forfeiture. The trial court denied appellant's motion. Neither the granting nor denial of a motion in limine is alone sufficient to preserve error for appellate review; error is properly preserved by objecting at the very time the evidence is offered at trial before the trier of fact. *Webb v. State*, 760 S.W.2d 263, 275 (Tex.Crim.App.1988).

when it admitted evidence of his suicide attempt, as the probative value of the evidence was substantially outweighed by its prejudicial effect.[8]

▇▇▇ Any error from the admission of evidence concerning appellant's suicide attempt was rendered harmless by the admission of the same information through unchallenged evidence. Appellant's former spouse testified that appellant informed her that, if the State's case against appellant went to trial, he would not be present; he would commit suicide or "become one of America's Most Wanted." Appellant did not object to this testimony.

▇▇▇ The improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged. *Crocker v. State*, 573 S.W.2d 190, 201 (Tex.Crim.App. 1978). Because the same evidence was admitted without objection, the error, if any, was harmless.

We overrule appellant's eighth issue.

### Discovery

In his ninth issue, appellant contends that the State violated its duty to provide exculpatory evidence pursuant to *Brady v. Maryland*,[9] violated appellant's due process rights, violated appellant's right to confront witnesses, and that the prosecutor committed prosecutorial misconduct by producing only two out of twelve photographs of the complainant and by failing to produce a videotape made during an examination of the complainant until just before appellant's medical expert testified at trial.[10]

Appellant's complaints are in reference to his motion for discovery, which requested "[a] copy of all the medical and 'Colposcope' photographs or slides and videotapes ..." for review by his expert. The relevant portion of the trial court's discovery order provided as follows:

> It is therefore ORDERED that the State of Texas, through her District Attorney, release copies of the medical records and colposcopic photographs of the complainant, which are in the possession of the State of Texas to defense counsel L.T. Bradt.

▇▇▇ Appellant contends that "[t]he failure to produce the videotape and the other photographs violates the clear meaning of the court's order." Assuming that the prosecutor technically violated the trial court's discovery order, violation of a discovery order does not automatically require reversal. *King v. State*, 746 S.W.2d 515, 517 (Tex.App.-Dallas 1988, pet. ref'd). The general rule is that "evidence willfully withheld from disclosure under a discovery order should be excluded from the trial." *See Hollowell v. State*, 571 S.W.2d 179, 180 (Tex.Crim.App.1978). If the trial court admits the disputed evidence, we review its ruling for abuse of discretion. *Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App.

---

8. Rule 403 of the Texas Rules of Evidence provides: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

9. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

10. Appellant waived his *Brady* complaint by failing to object in the trial court. *See* Tex.R.App. P. 33.1. *See also Wilson v. State*, 7 S.W.3d 136, 146 (Tex.Crim.App.1999). Although appellant contends that the prosecutor's violation of the discovery order constituted prosecutorial misconduct, the only allegations that appellant presents in his argument under prosecutorial misconduct concerns the presentation of false testimony. Accordingly, we do not address appellant's prosecutorial misconduct contention in his ninth point of error. Tex. R.App. P. 38.1(h).

1994). The Court of Criminal Appeals has held that even if the State violates a discovery order, if the State reveals the requested information in time for the defendant to use it on cross-examination of the State's witnesses, the evidence need not be excluded. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App.2000).

Dr. Guertin, appellant's medical expert, was permitted to view the videotape prior to testifying, and testified that his review of the video did not affect his initial assessment. Dr. Guertin based his trial testimony on his review of the video, and reviewed the video before Dr. McNeese, Dr. Park, and Dr. Lahoti testified; the State therefore revealed the requested information in time for the defendant to use it on cross-examination of the State's witness. Furthermore, the photographs that appellant complains were wrongfully withheld were created from freeze-frame video images after the State tendered the photographs in its possession pursuant to the trial court's discovery order. We hold that the trial court did not abuse its discretion in admitting the disputed evidence.

We overrule appellant's ninth issue.

### Use of Appellant's Incriminating Statements

In his tenth issue, appellant contends that the trial court erred by admitting statements made by him to Officer Ballard because Officer Ballard failed to warn him of his Fifth Amendment right to remain silent.

Relying on *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), appellant argues that "the right to be warned of the right to counsel is [sic] when the investigation is no longer a general inquiry" and Ballard should have therefore advised appellant of his rights provided by the Fifth Amendment.

The State is not required to give *Miranda* warnings to a suspect until after that person has been taken into custody or otherwise deprived of his freedom of action in a significant way. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Appellant's reliance on *Escobedo* is misplaced. In *Escobedo*, the United States Supreme Court held as follows:

> that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, *the suspect has been taken into police custody*, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'The Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.

*Escobedo v. Illinois*, 378 U.S. at 490–91, 84 S.Ct. at 1765 (internal citations omitted) (emphasis added).

Officer Ballard contacted appellant by telephone to advise him that charges had been filed against him. During Officer Ballard's telephone conversation with appellant, appellant told her that the semen that was found in the rape kit could not be his, because "all [that the complainant] did was rub on me." After Officer Ballard suggested that what was recovered may have been pre-ejaculate, appellant responded, "[W]ell how do I just get this over with and plead guilty." Appellant was not in police custody, had nei-

ther requested nor been denied the opportunity to consult with a lawyer, and, according to Ballard, volunteered this information. We hold that the trial court did not err in allowing Officer Ballard to testify, over appellant's Fifth Amendment objection, regarding appellant's incriminating statements he made over the telephone.

We overrule appellant's tenth issue.

## Denial of Fair and Impartial Judge

In his eleventh issue, appellant contends that he was denied his constitutional right to a fair and impartial judge under the Fourteenth Amendment of the United States Constitution. Appellant contends that the following instances demonstrate that the trial court was biased against appellant:

- "... the continued refusal of the judge to allow Keith to refer to Officer Ballard's probable cause affidavit as perjurious or even false."

- "allowing in evidence of the bond forfeiture and Keith's attempted suicide—evidence designed to prejudice the jury against Keith."

- "when sustained [sic] an objection to the word 'allegation' in a question to Mr. Bolding, that 'What [sic] we're dealing with here is an allegation.' "

- "The court then chided counsel for making 'side bars.' "

- "By preventing Keith from asking questions about the allegations against him ..."

11. The record reflects that the State loaned defense counsel a HPD Lab Report, which was the property of HPD, to use for cross-examination of State witnesses. Defense counsel highlighted three lines on the State's report. The State responded to appellant's contention that the Court confiscated defense counsel's work product by stating, "... appellant's claim that one of the documents contained his work product because he highlighted three lines on the document is unfounded.

- "But [the trial court's] greatest display of bias against Keith was when she ordered Keith's attorney to surrender documents in his possession—that contained his work product—including the complete HPD Crime Lab Report, refused [sic] to maintain them for appellate purposes and then stated that *she* would shred them." (emphasis in original).[11]

 Appellant has not directed us to any evidence in the record that supports his contention that the trial judge was biased or prejudiced against him. Bias must come from an extrajudicial source and result in an opinion on the merits of the case other than what the judge learned from participation in the case. *Rosas v. State*, 76 S.W.3d 771, 774 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Appellant complains only of actions taken by the trial judge while acting in her capacity as the presiding judge at appellant's trial. His proper remedy is to assign error on appeal on the basis of these adverse rulings. *Cumpian v. State*, 812 S.W.2d 88, 91 (Tex. App.-San Antonio 1991, no writ).

We overrule appellant's eleventh point of error.

## Admission and Exclusion of Evidence

In his fourteenth issue, appellant contends that the trial court abused its discretion when it "admitted evidence that should have been excluded and excluded evidence that should have been admitted."

Appellant cites no authority showing that he can convert another's property by defacing the other person's property in this manner. Nor has he shown how highlighting another person's written words transforms that other person's expression into counsel's own work product. Appellant simply highlighted a small portion of a document that did not belong to him. Appellant's unauthorized markings should not be rewarded by bestowing him with ownership of the document."

Specifically, appellant complains of eleven instances of alleged error:

1. Admitting evidence of his suicide attempt.
2. Admitting evidence of his bond revocation.
3. Admitting Officer Ballard's testimony regarding the incriminating statements appellant made to her over the telephone.
4. Excluding testimony from McCarroll concerning Dr. McNeese's fellowship.
5. Excluding cross-examination of Dr. McNeese concerning her fellowship.
6. Sustaining the State's objection to a question to the complainant asking that she explain what she meant when she testified that "it felt like a penis."
7. Overruling appellant's objection to Officer Ballard's testimony regarding the videotaped interview of the complainant.
8. Sustaining the State's objection to appellant's question to Officer Ballard concerning whether she would have pursued charges against appellant if she had not been informed that sperm was recovered from the rape kit.
9. Refusing to allow appellant to cross-examine Bolding about his awareness of literature that says that the protein P–30 is found in women taking oral contraceptives.
10. Sustaining the State's objection to a question posed to Bolding "As to whether or not the P–30 test reacts only through a protein that is found only within the male body."

11. Refusing to allow appellant to cross-examine Bolding about an article in the journal entitled "Journal of Clinical Chemistry."

██ We have previously determined appellant's first five contentions to be without merit. Furthermore, appellant has provided no argument or authority in support of his sixth through tenth contentions. TEX.R.APP. P. 38.1(h). Finally, because Bolding was unfamiliar with the Journal of Clinical Chemistry, and defense counsel did not otherwise establish the journal as a reliable authority, we hold that the trial court did not abuse its discretion in refusing to permit appellant to cross-examine Bolding about an article in the journal entitled Journal of Clinical Chemistry. TEX.R. EVID. 803(18).[12]

We overrule appellant's fourteenth issue.

## Judicial Notice

Appellant provided this Court with a copy of an article that purportedly appeared on the Houston Chronicle's web site, which states in relevant part as follows:

> ... DNA section head James Bolding, with the police department 23 years, retired Wednesday after [he was] recommended for termination. Such a recommendation typically leads to dismissal from the Houston Police Department.

Based upon that purported article, appellant asks that this Court take judicial notice that "Mr. Bolding was recommended for termination after the internal investigation into problems at the Crime Lab and

---

**12.** Rule 803(18) of the Texas Rules of Evidence provides as follows:

To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

that he resigned rather than face termination."

An appellate court may take judicial notice of facts that the trial court could have judicially noticed, or facts necessary to determine its jurisdiction. *Lemmon v. United Waste Sys., Inc.,* 958 S.W.2d 493, 499 (Tex.App.-Fort Worth 1997, pet. denied). Those facts must, however, be "notorious, well known, or easily ascertainable" in order to be judicially noticed. *Landry v. State,* 60 S.W.3d 263, 266 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

The article appellant submitted in support of his motion specifically states only that "Such a recommendation *typically* leads to dismissal from the Houston Police Department." (Emphasis added). We hold that the reason for Bolding's resignation from the Houston Police Department is not "notorious, well known, or easily ascertainable," because the purported article itself states that a recommendation is not conclusive, but only typically leads to termination. *See Landry,* 60 S.W.3d at 266.

Appellant's motion to take judicial notice is denied.

## Conclusion

We affirm the judgment of the trial court.