TURNER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-361-CR

VINCENT EUGENE TURNER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Vincent Eugene Turner was convicted by a jury for the offense of aggravated sexual assault of S.H., a child under fourteen.  During the sentencing phase, Appellant pleaded true to an enhancement allegation, and the State presented evidence of sexual conduct involving Appellant and other children.  Upon considering all the evidence, the jury assessed Appellant’s punishment at life imprisonment and a $10,000 fine.  The trial court sentenced Appellant accordingly.  In three issues, Appellant challenges the factual sufficiency of the evidence and argues that the trial court erred in allowing hearsay testimony and his videotaped statements into evidence.  The parties are familiar with the facts, and the law is well settled.  We will affirm.

I.  Factual Sufficiency

The State charged Appellant by indictment with aggravated sexual assault of S.H., a child under fourteen, by penetration, and the jury found Appellant guilty as alleged in the indictment.  
See
 
Tex. Penal Code Ann
. § 22.021(a)(1)(B)(I) (Vernon Supp. 2004-05).  In his third issue, Appellant complains that the evidence is factually insufficient to support his conviction for aggravated sexual assault against S.H. because the jury’s determination that Appellant’s sexual organ penetrated S.H.’s sexual organ was “clearly wrong.”  
Because Appellant raises only a factual sufficiency complaint, we begin with the presumption that the evidence is legally sufficient to support his conviction.  
See Conner v. State
, 67 S.W.3d 192, 198 (Tex. Crim. App. 2001). 

In reviewing the factual sufficiency of the evidence to support Appellant’s conviction, we will examine all the evidence concerning the issue of penetration in a neutral light, favoring neither party.  
See Zuniga v. State
, No. 539-02, 2004 WL 840786, at *4, 7, 9 (Tex. Crim. App. Apr. 21, 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
.
 at *7.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 
at *4; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
2004 WL 840786, at *4.

During trial, the State presented evidence that Appellant was hired to work as a gym instructor in May 2000 at the Northwest Boys and Girls Club in Wichita Falls, Texas.  S.H. testified that one day, while she was at the Boys and Girls Club in the summer of 2000, she was helping Appellant pick up balls in the gym’s “ball room.”  S.H. testified that Appellant came into the “ball room,” got on top of her and pulled his “thingy” out of his underwear.  She testified that she was on her back on the floor with her pants down but could not remember how she got there. 

S.H. clarified that by “thingy,” she was referring to Appellant’s “private part.”  When asked what Appellant did with his private part, S.H. replied, “He was just on top of me.”  S.H. testified that Appellant asked her if it hurt, and she testified that, while “[i]t hurt on my private,” she told Appellant that it did not hurt.  S.H. stated that her legs were open “wide” and they were “bent.”  S.H. testified that Appellant told her not to tell anyone.  During trial, S.H. stated that she liked Appellant “for a friend.” 

When asked, “Did [Appellant] put his thingy inside of you, inside of your private parts,” S.H. responded, “No, because his pants was up.”  S.H. said that she touched Appellant’s private parts “[j]ust one time.”  However, in later questioning, the State asked S.H., “When you had your pants down and he was on top of you, he didn’t touch your private part with anything?”  S.H. answered, “Just with his thingy,” which she described as being “hard.”  Appellant did not cross-examine S.H. 

S.H. testified that Boys and Girls Club employee Amber Hawkins was the first person she told about what Appellant did to her.  Hawkins testified that on August 3, 2000, S.H. told her that Appellant came into the ball closet, got on top of her, touched her, hurt her, and told her not to tell anybody.  Kim Hansen, a family nurse practitioner and a sexual assault nurse examiner, testified that she interviewed and examined S.H. on August 17, 2000.  Hansen recounted the following portion of S.H.’s medical history interview, which she wrote down exactly as S.H. told her:

She states, quote, I’m here because of what he did to me.  This is in answer to the question of Why are you here today.  I’m here because of what he did to me.  He wasn’t supposed to do it to me.  
He stuck it in me, his weenie in my private part
.  He hurt my legs.  He bent them right there, which time she pointed to her upper thigh.  When he got on top of me, he bent them like that, and she pointed -- she points to her -- her -- she pulls her knees – heels together and her knees bend and then they fall at her side.  She’s in what we call frog leg position.  He touched on me there, and she pointed to her vagina.  My private parts, he touched with his hands.  [Emphasis added.] 

Hansen testified that S.H. was cooperative and talkative, but that she also “appear[ed] somewhat mentally delayed.” 

The State also called Dr. Terry Johnson to testify, who is a pediatrician and the medical coordinator for the Child Advocacy Center in Wichita Falls.  Dr. Johnson testified that he examined and treated S.H. on August 17, 2000.  Dr. Johnson stated that he was assisted by Hansen, the sexual assault nurse examiner who took down the above described history of the encounter between Appellant and S.H.  Dr. Johnson opined that, given the history S.H. gave, her sexual organ was penetrated.  On cross-examination, Dr. Johnson acknowledged that he was not in the room when Hansen interviewed S.H.

Dr. Johnson testified that he conducted a physical examination of S.H., and he noted the following physical findings:  “Estrogenized annular hym[e]n with no tear, transections, or tears.”  Dr. Johnson testified that “[d]amage to hym[e]n will only be present about 30 to 40 percent of times when there has been penetration,” and he testified that because S.H. was in the midst of puberty, any tearing, bleeding, or bruising could have healed within seventy-two hours.  Dr. Johnson testified that the physical examination occurred more than seventy-two hours after the alleged sexual assault.  According to Dr. Johnson, the longer the delay in the disclosure of a sexual assault, the more likely it is that there will be no physical evidence of penetration.  On cross-examination, Dr. Johnson agreed that the only basis he had for concluding that S.H. was penetrated came from S.H.’s statements to Hansen. 

Dr. Johnson also testified that, while S.H. was eleven years old, “her behavior was of someone less mature, . . . more along the lines of a 5 or 6 year old.”  Dr. Johnson testified that it is typical for children who have been sexually abused to give “piecemeal disclosures,” just letting “a little bit out” because they are afraid or have been told not to tell anyone.  In fact, when asked whether a child might leave out details such as penetration, Dr. Johnson stated, “Usually the most unpleasant details of the events are the ones the child has the hardest time remembering.”  When asked whether a child might hold back some of the details in a courtroom, Dr. Johnson testified as follows:

Well, I think it would just be common sense to think that standing up in a room full of people who you don’t know and talking about something that’s very personal would be difficult even for an adult.  An 11-year-old child, particularly one who might be somewhat developmentally delayed, it would be almost a surprise to me if that child were able to be very specific in a great number of details consistent with the statements that they had made in the past in a, you know, one-on-one setting with someone with no other distractions. 

Appellant did not testify during trial, but the State offered into evidence his videotaped statement after he was arrested, in which he stated, “The other girls I did not touch.  [S.H.] I did touch.”  When asked to describe what happened, Appellant replied, “She was in, right there in the ball room.  I had the door open and she was playing with herself and I said let me see.  And I touched her on her breast.  And I, when she stopped playing with herself I touched my hand down on her private parts.” 

Appellant directs us to S.H.’s testimony at trial that she was not penetrated, which conflicted with her prior statement to Hansen that Appellant had penetrated her; inconclusive medical evidence concerning the issue of whether S.H. was penetrated; and the videotape wherein Appellant admitted only to touching S.H.  
See Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003) (stating that a proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal).  It is evident from the record that there is no physical medical evidence tending to prove or disprove that Appellant penetrated S.H.  Thus, we must focus on S.H.’s testimony and the out-of-court statements made by S.H. and Appellant.  
See Villalon v. State
, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990) (stating that “penetration may be proven by circumstantial evidence”).

Appellant characterizes his and S.H.’s versions of what occurred in the ball room as being in agreement on the fact that Appellant did not penetrate but only touched S.H.’s sexual organ.  However, each gave differing accounts of what happened, with S.H. describing that Appellant got on top of her and Appellant claiming that he merely touched her private parts with his hand.  S.H. testified that Appellant did not put his “thingy” inside of her because his pants were up, but she also testified that he pulled his “thingy” out of his underwear, it was hard, he laid on top of her, her legs were bent and open wide, he touched her private part with his “thingy,” and that “[i]t hurt on my private.”

The jury heard the testimony of Hansen, who testified that S.H. previously told her that Appellant penetrated her sexual organ with his sexual organ in the ball room.  While S.H.’s testimony at trial seemingly conflicted with her prior statement, the jury could have taken into consideration Dr. Johnson’s testimony about “piecemeal disclosures” and determined that, in court, S.H. was holding back the more unpleasant details of penetration that she had felt more comfortable providing to Hansen. 

We are cognizant of the fact finder’s role and unique position, a position that we are unable to occupy.  
See Johnson v. State
, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).  As the fact finder in this case, the jury judged the credibility of the witnesses and could have “believe[d] all, some, or none of the testimony.”  
Chambers v. State
, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); 
see Penagraph v. State,
 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981); 
see also Grimes v. State
, 135 S.W.3d 803, 811 (Tex. App.—Houston [1
st
 Dist.] 2004, no pet.) (holding inconsistencies in child’s testimony as to whether the defendant penetrated her “were properly left for the jury to make the necessary credibility determinations”).  Further,

[a] factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record.  Such an approach occasionally permits some credibility assessment but usually requires deference to the jury’s conclusion based on matters beyond the scope of the appellate court’s legitimate concern.  Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury’s determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.

Johnson
, 23 S.W.3d at 8 (footnote and citation omitted).  In this case, the jury, as the fact finder, determined the weight and credibility to be given to each witness’s testimony and ultimately found that Appellant penetrated S.H.’s sexual organ with his sexual organ.  Because the available record does not clearly reveal that a different result is appropriate, we must defer to the jury’s determination.  
See id
.

Upon reviewing the evidence under the applicable standard of review, giving due deference to the fact finder’s determinations, we conclude that the evidence presented at trial is factually sufficient to establish beyond a reasonable doubt that Appellant penetrated S.H.’s sexual organ with his sexual organ.  
See
 
Zuniga
, 2004 WL 840786, at *4, 7, 9; 
see also Grimes
, 135 S.W.3d at 811.  Appellant’s third issue is overruled.

II.  Hearsay

In his first issue, Appellant argues that the trial court abused its discretion by allowing into evidence Amber Hawkins’s statement about what S.H. told her.  Specifically, Appellant contends that Hawkins’s testimony as to what S.H. told her is inadmissible hearsay that should not have come into evidence under either the excited utterance exception to the hearsay rule or under code of criminal procedure article 38.072, which governs outcry statements.  
See
 
Tex. Code Crim. Proc. Ann
. art. 38.072 (Vernon Supp. 2004-05) (outcry testimony); 
Tex. R. Evid
. 803(2) (excited utterances).

Initially, after conducting a hearing outside the presence of the jury, the court determined that it could not tell whether Hawkins was the first person over eighteen to whom S.H. made a statement about the offense.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 38.072, § 2.  The trial court, however, stated that it would reconsider its ruling if the State had additional witnesses.  After S.H.’s testimony that Hawkins was the first person she told about the incident involving Appellant, the State offered Hawkins’s testimony regarding the outcry, and the trial court allowed the State to elicit the outcry testimony from Hawkins. 

As the State points out in its brief, Appellant did not object during trial to the now-complained-of testimony offered by Hawkins.  To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if those grounds are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Accordingly, we will not consider the complaints about Hawkins’s testimony that Appellant raises for the first time on appeal because they are not properly before us.  Appellant’s first issue is overruled.

III.  Videotaped Statement

In his second issue, Appellant contends that the trial court erred by allowing into evidence his videotaped statement admitting sexual contact with S.H.  At trial, Appellant argued that his videotaped statement was inadmissible because his request to terminate police questioning when he asked, “Am I free to go?” was not scrupulously honored by the interviewing officer. 
 See Michigan v. Mosley
, 423 U.S. 96, 104, 96 S. Ct. 321, 326 (1975) (holding invocation of right to remain silent must be “scrupulously honored”); 
Dowthitt v. State
, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996) (stating that once a suspect is in custody, “a failure to cut off questioning after a suspect invokes his right to remain silent violates his rights and renders any subsequently obtained statements inadmissible” but that such an invocation must be clear and unambiguous).  Appellant also asserted that the State’s use of “religious coercion” prevented him from terminating the interview.  The trial court overruled these two objections, finding that Appellant did not seek to terminate the interview. 

On appeal, Appellant asserts that his videotaped statement was inadmissible because he, in the following three statements, requested that the interview be terminated and it was not:  (1) “I have a family I need to talk to”; (2) “The only thing I want to do is to . . . go to my wife and sit down and talk to my wife, see my wife and hug her”; and (3) “I’d like to talk to my wife.”  Appellant, however, did not present this specific argument to the trial court.  Because Appellant’s objection at trial does not comport with the argument he raises on appeal, his argument on appeal is forfeited.  
See
 
Tex. R. App. P.
 33.1(a); 
see also Bell v. State
, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 827 (1997); 
Rezac v. State
, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (both stating “[a]n objection stating one legal basis may not be used to support a different legal theory on appeal.”).  Appellant’s second point is overruled.

IV.  Conclusion

Having overruled Appellant’s three issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: September 16, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.