COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-361-CR
 
 
VINCENT EUGENE TURNER                                                     APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM THE 30TH DISTRICT COURT 
OF WICHITA COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Vincent Eugene Turner was convicted by a jury for the offense of aggravated 
sexual assault of S.H., a child under fourteen.  During the sentencing 
phase, Appellant pleaded true to an enhancement allegation, and the State 
presented evidence of sexual conduct involving Appellant and other children. 
Upon considering all the evidence, the jury assessed Appellant’s punishment at 
life imprisonment and a $10,000 fine. The trial court sentenced Appellant 
accordingly. In three issues, Appellant challenges the factual sufficiency of 
the evidence and argues that the trial court erred in allowing hearsay testimony 
and his videotaped statements into evidence. The parties are familiar with the 
facts, and the law is well settled. We will affirm.
I. Factual Sufficiency
        The 
State charged Appellant by indictment with aggravated sexual assault of S.H., a 
child under fourteen, by penetration, and the jury found Appellant guilty as 
alleged in the indictment. See Tex. 
Penal Code Ann. § 22.021(a)(1)(B)(I) (Vernon Supp. 2004-05). In his 
third issue, Appellant complains that the evidence is factually insufficient to 
support his conviction for aggravated sexual assault against S.H. because the 
jury’s determination that Appellant’s sexual organ penetrated S.H.’s 
sexual organ was “clearly wrong.”  Because Appellant raises only a 
factual sufficiency complaint, we begin with the presumption that the evidence 
is legally sufficient to support his conviction. See Conner v. State, 67 
S.W.3d 192, 198 (Tex. Crim. App. 2001).
        In 
reviewing the factual sufficiency of the evidence to support Appellant’s 
conviction, we will examine all the evidence concerning the issue of penetration 
in a neutral light, favoring neither party. See Zuniga v. State, No. 
539-02, 2004 WL 840786, at *4, 7, 9 (Tex. Crim. App. Apr. 21, 2004). The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt. Id. at *7. There are two ways 
evidence may be factually insufficient: (1) the evidence supporting the verdict 
or judgment, considered by itself, is too weak to support the finding of guilt 
beyond a reasonable doubt; or (2) when there is evidence both supporting and 
contradicting the verdict or judgment, weighing all of the evidence, the 
contrary evidence is so strong that guilt cannot be proven beyond a reasonable 
doubt. Id. “This standard acknowledges that evidence of guilt can 
‘preponderate’ in favor of conviction but still be insufficient to prove the 
elements of the crime beyond a reasonable doubt.” Id. In other words, 
evidence supporting a guilty finding can outweigh the contrary proof but still 
be insufficient to prove the elements of an offense beyond a reasonable doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses. Id. at *4; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997). We may not substitute our judgment for that of 
the fact finder’s. Zuniga, 2004 WL 840786, at *4.
        During 
trial, the State presented evidence that Appellant was hired to work as a gym 
instructor in May 2000 at the Northwest Boys and Girls Club in Wichita Falls, 
Texas. S.H. testified that one day, while she was at the Boys and Girls Club in 
the summer of 2000, she was helping Appellant pick up balls in the gym’s 
“ball room.” S.H. testified that Appellant came into the “ball room,” 
got on top of her and pulled his “thingy” out of his underwear. She 
testified that she was on her back on the floor with her pants down but could 
not remember how she got there.
        S.H. 
clarified that by “thingy,” she was referring to Appellant’s “private 
part.” When asked what Appellant did with his private part, S.H. replied, 
“He was just on top of me.” S.H. testified that Appellant asked her if it 
hurt, and she testified that, while “[i]t hurt on my private,” she told 
Appellant that it did not hurt. S.H. stated that her legs were open “wide” 
and they were “bent.” S.H. testified that Appellant told her not to tell 
anyone. During trial, S.H. stated that she liked Appellant “for a friend.”
        When 
asked, “Did [Appellant] put his thingy inside of you, inside of your private 
parts,” S.H. responded, “No, because his pants was up.” S.H. said that she 
touched Appellant’s private parts “[j]ust one time.” However, in later 
questioning, the State asked S.H., “When you had your pants down and he was on 
top of you, he didn’t touch your private part with anything?” S.H. answered, 
“Just with his thingy,” which she described as being “hard.” Appellant 
did not cross-examine S.H.
        S.H. 
testified that Boys and Girls Club employee Amber Hawkins was the first person 
she told about what Appellant did to her. Hawkins testified that on August 3, 
2000, S.H. told her that Appellant came into the ball closet, got on top of her, 
touched her, hurt her, and told her not to tell anybody. Kim Hansen, a family 
nurse practitioner and a sexual assault nurse examiner, testified that she 
interviewed and examined S.H. on August 17, 2000. Hansen recounted the following 
portion of S.H.’s medical history interview, which she wrote down exactly as 
S.H. told her:

She states, quote, I’m here 
because of what he did to me. This is in answer to the question of Why are you 
here today. I’m here because of what he did to me. He wasn’t supposed to do 
it to me. He stuck it in me, his weenie in my private part. He hurt my 
legs. He bent them right there, which time she pointed to her upper thigh. When 
he got on top of me, he bent them like that, and she pointed -- she points to 
her -- her -- she pulls her knees – heels together and her knees bend and then 
they fall at her side. She’s in what we call frog leg position. He touched on 
me there, and she pointed to her vagina. My private parts, he touched with his 
hands. [Emphasis added.]
 
Hansen testified that S.H. was 
cooperative and talkative, but that she also “appear[ed] somewhat mentally 
delayed.”
        The 
State also called Dr. Terry Johnson to testify, who is a pediatrician and the 
medical coordinator for the Child Advocacy Center in Wichita Falls. Dr. Johnson 
testified that he examined and treated S.H. on August 17, 2000. Dr. Johnson 
stated that he was assisted by Hansen, the sexual assault nurse examiner who 
took down the above described history of the encounter between Appellant and S.H. 
Dr. Johnson opined that, given the history S.H. gave, her sexual organ was 
penetrated. On cross-examination, Dr. Johnson acknowledged that he was not in 
the room when Hansen interviewed S.H.
        Dr. 
Johnson testified that he conducted a physical examination of S.H., and he noted 
the following physical findings: “Estrogenized annular hym[e]n with no tear, 
transections, or tears.” Dr. Johnson testified that “[d]amage to hym[e]n 
will only be present about 30 to 40 percent of times when there has been 
penetration,” and he testified that because S.H. was in the midst of puberty, 
any tearing, bleeding, or bruising could have healed within seventy-two hours. 
Dr. Johnson testified that the physical examination occurred more than 
seventy-two hours after the alleged sexual assault. According to Dr. Johnson, 
the longer the delay in the disclosure of a sexual assault, the more likely it 
is that there will be no physical evidence of penetration. On cross-examination, 
Dr. Johnson agreed that the only basis he had for concluding that S.H. was 
penetrated came from S.H.’s statements to Hansen.
        Dr. 
Johnson also testified that, while S.H. was eleven years old, “her behavior 
was of someone less mature, . . . more along the lines of a 5 or 6 year old.” 
Dr. Johnson testified that it is typical for children who have been sexually 
abused to give “piecemeal disclosures,” just letting “a little bit out” 
because they are afraid or have been told not to tell anyone. In fact, when 
asked whether a child might leave out details such as penetration, Dr. Johnson 
stated, “Usually the most unpleasant details of the events are the ones the 
child has the hardest time remembering.” When asked whether a child might hold 
back some of the details in a courtroom, Dr. Johnson testified as follows:

Well, I think it would just be 
common sense to think that standing up in a room full of people who you don’t 
know and talking about something that’s very personal would be difficult even 
for an adult. An 11-year-old child, particularly one who might be somewhat 
developmentally delayed, it would be almost a surprise to me if that child were 
able to be very specific in a great number of details consistent with the 
statements that they had made in the past in a, you know, one-on-one setting 
with someone with no other distractions.
 
        Appellant 
did not testify during trial, but the State offered into evidence his videotaped 
statement after he was arrested, in which he stated, “The other girls I did 
not touch. [S.H.] I did touch.” When asked to describe what happened, 
Appellant replied, “She was in, right there in the ball room. I had the door 
open and she was playing with herself and I said let me see. And I touched her 
on her breast. And I, when she stopped playing with herself I touched my hand 
down on her private parts.”
        Appellant 
directs us to S.H.’s testimony at trial that she was not penetrated, which 
conflicted with her prior statement to Hansen that Appellant had penetrated her; 
inconclusive medical evidence concerning the issue of whether S.H. was 
penetrated; and the videotape wherein Appellant admitted only to touching S.H. See 
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003) (stating that a 
proper factual sufficiency review must include a discussion of the most 
important and relevant evidence that supports the appellant’s complaint on 
appeal). It is evident from the record that there is no physical medical 
evidence tending to prove or disprove that Appellant penetrated S.H. Thus, we 
must focus on S.H.’s testimony and the out-of-court statements made by S.H. 
and Appellant. See Villalon v. State, 791 S.W.2d 130, 133 (Tex. Crim. 
App. 1990) (stating that “penetration may be proven by circumstantial 
evidence”).
        Appellant 
characterizes his and S.H.’s versions of what occurred in the ball room as 
being in agreement on the fact that Appellant did not penetrate but only touched 
S.H.’s sexual organ. However, each gave differing accounts of what happened, 
with S.H. describing that Appellant got on top of her and Appellant claiming 
that he merely touched her private parts with his hand. S.H. testified that 
Appellant did not put his “thingy” inside of her because his pants were up, 
but she also testified that he pulled his “thingy” out of his underwear, it 
was hard, he laid on top of her, her legs were bent and open wide, he touched 
her private part with his “thingy,” and that “[i]t hurt on my private.”
        The 
jury heard the testimony of Hansen, who testified that S.H. previously told her 
that Appellant penetrated her sexual organ with his sexual organ in the ball 
room. While S.H.’s testimony at trial seemingly conflicted with her prior 
statement, the jury could have taken into consideration Dr. Johnson’s 
testimony about “piecemeal disclosures” and determined that, in court, S.H. 
was holding back the more unpleasant details of penetration that she had felt 
more comfortable providing to Hansen.
        We 
are cognizant of the fact finder’s role and unique position, a position that 
we are unable to occupy. See Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. 
App. 2000). As the fact finder in this case, the jury judged the credibility of 
the witnesses and could have “believe[d] all, some, or none of the 
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 
1991); see Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 
[Panel Op.] 1981); see also Grimes v. State, 135 S.W.3d 803, 811 (Tex. 
App.—Houston [1st Dist.] 2004, no pet.) (holding inconsistencies in 
child’s testimony as to whether the defendant penetrated her “were properly 
left for the jury to make the necessary credibility determinations”). Further,
 
[a] factual sufficiency 
analysis can consider only those few matters bearing on credibility that can be 
fully determined from a cold appellate record. Such an approach occasionally 
permits some credibility assessment but usually requires deference to the 
jury’s conclusion based on matters beyond the scope of the appellate court’s 
legitimate concern. Unless the available record clearly reveals a different 
result is appropriate, an appellate court must defer to the jury’s 
determination concerning what weight to give contradictory testimonial evidence 
because resolution often turns on an evaluation of credibility and demeanor, and 
those jurors were in attendance when the testimony was delivered.
 
Johnson, 23 S.W.3d at 8 
(footnote and citation omitted). In this case, the jury, as the fact finder, 
determined the weight and credibility to be given to each witness’s testimony 
and ultimately found that Appellant penetrated S.H.’s sexual organ with his 
sexual organ. Because the available record does not clearly reveal that a 
different result is appropriate, we must defer to the jury’s determination. See 
id.
        Upon 
reviewing the evidence under the applicable standard of review, giving due 
deference to the fact finder’s determinations, we conclude that the evidence 
presented at trial is factually sufficient to establish beyond a reasonable 
doubt that Appellant penetrated S.H.’s sexual organ with his sexual organ. See 
Zuniga, 2004 WL 840786, at *4, 7, 9; see also Grimes, 135 S.W.3d 
at 811. Appellant’s third issue is overruled.
II. Hearsay
        In 
his first issue, Appellant argues that the trial court abused its discretion by 
allowing into evidence Amber Hawkins’s statement about what S.H. told her. 
Specifically, Appellant contends that Hawkins’s testimony as to what S.H. told 
her is inadmissible hearsay that should not have come into evidence under either 
the excited utterance exception to the hearsay rule or under code of criminal 
procedure article 38.072, which governs outcry statements. See Tex. Code Crim. Proc. Ann. art. 38.072 
(Vernon Supp. 2004-05) (outcry testimony); Tex. R. Evid. 803(2) (excited 
utterances).
        Initially, 
after conducting a hearing outside the presence of the jury, the court 
determined that it could not tell whether Hawkins was the first person over 
eighteen to whom S.H. made a statement about the offense. See Tex. Code Crim. Proc. Ann. art. 38.072, 
§ 2. The trial court, however, stated that it would reconsider its ruling if 
the State had additional witnesses. After S.H.’s testimony that Hawkins was 
the first person she told about the incident involving Appellant, the State 
offered Hawkins’s testimony regarding the outcry, and the trial court allowed 
the State to elicit the outcry testimony from Hawkins.
        As 
the State points out in its brief, Appellant did not object during trial to the 
now-complained-of testimony offered by Hawkins. To preserve a complaint for our 
review, a party must have presented to the trial court a timely request, 
objection, or motion that states the specific grounds for the desired ruling if 
those grounds are not apparent from the context of the request, objection, or 
motion. Tex. R. App. P. 
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) 
(op. on reh’g), cert. denied, 526 U.S. 1070 (1999). Accordingly, we 
will not consider the complaints about Hawkins’s testimony that Appellant 
raises for the first time on appeal because they are not properly before us. 
Appellant’s first issue is overruled.
III. Videotaped Statement
        In 
his second issue, Appellant contends that the trial court erred by allowing into 
evidence his videotaped statement admitting sexual contact with S.H. At trial, 
Appellant argued that his videotaped statement was inadmissible because his 
request to terminate police questioning when he asked, “Am I free to go?” 
was not scrupulously honored by the interviewing officer. See Michigan v. 
Mosley, 423 U.S. 96, 104, 96 S. Ct. 321, 326 (1975) (holding invocation of 
right to remain silent must be “scrupulously honored”); Dowthitt v. State, 
931 S.W.2d 244, 257 (Tex. Crim. App. 1996) (stating that once a suspect is in 
custody, “a failure to cut off questioning after a suspect invokes his right 
to remain silent violates his rights and renders any subsequently obtained 
statements inadmissible” but that such an invocation must be clear and 
unambiguous). Appellant also asserted that the State’s use of “religious 
coercion” prevented him from terminating the interview. The trial court 
overruled these two objections, finding that Appellant did not seek to terminate 
the interview.
        On 
appeal, Appellant asserts that his videotaped statement was inadmissible because 
he, in the following three statements, requested that the interview be 
terminated and it was not: (1) “I have a family I need to talk to”; (2) 
“The only thing I want to do is to . . . go to my wife and sit down and talk 
to my wife, see my wife and hug her”; and (3) “I’d like to talk to my 
wife.” Appellant, however, did not present this specific argument to the trial 
court. Because Appellant’s objection at trial does not comport with the 
argument he raises on appeal, his argument on appeal is forfeited. See Tex. R. App. P. 33.1(a); see also 
Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), cert. denied, 
522 U.S. 827 (1997); Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 
1990) (both stating “[a]n objection stating one legal basis may not be used to 
support a different legal theory on appeal.”). Appellant’s second point is 
overruled.
IV. Conclusion
        Having 
overruled Appellant’s three issues, we affirm the trial court’s judgment.
 
 
                                                          ANNE 
GARDNER
                                                          JUSTICE
 
PANEL B:   DAUPHINOT, 
HOLMAN, and GARDNER, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: September 16, 2004

 
NOTES
1.  See 
Tex. R. App. P. 47.4.