Affirmed and Memorandum Opinion filed September 5, 2006








Affirmed and Memorandum Opinion filed September 5, 2006.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00144-CR

NO. 14-05-00145-CR

____________

 

ROMAN ANTHONY BARNES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause Nos. 972,564
& 972,563

 



 

M E M O R A N D U M   O P I N I O N








In separate cases tried together, a jury convicted
appellant Roman Anthony Barnes of aggravated assault and taking a weapon from a
peace officer.  The jury also found two enhancement paragraphs true and
assessed appellant=s punishment at forty years= confinement in
the Texas Department of Corrections, Institutional Division.  On appeal,
appellant raises three issues common to both cases, and also challenges the
legal and factual sufficiency of the evidence supporting specific elements of
each offense.  The issues common to both cases are that the trial court erred
by (1) refusing to discharge the jury panel under Batson v. Kentucky,
(2) allowing the State to amend its indictment, over appellant=s objection, after
commencement of trial, and (3) allowing the State to introduce a prior felony
conviction into evidence without timely notice in violation of the trial court=s order.  Specific
to appellant=s conviction for aggravated assault, appellant
contends the evidence is legally and factually insufficient to prove that he
used or exhibited a firearm during the offense and that he had the intent to
threaten the complainant with imminent bodily injury.  Specific to appellant=s conviction for
taking a weapon from a peace officer, he contends the evidence is legally and
factually insufficient to prove that he had the intent to harm the complainant. 
We affirm.

I.        Factual
Background

On the evening of December 30, 2003, Corporal Rudy Guillen
of the Harris County Constables Office, Precinct 3, responded to a domestic
disturbance call at a Harris County residence.  When Guillen arrived, he saw
appellant and a female at the door of the residence.  Guillen separated the two
as he conducted his investigation, placing appellant in the back seat of his
patrol car.  When Guillen learned a warrant had been issued for appellant=s arrest, he
decided to arrest appellant and take him to jail.  However, when Guillen
attempted to handcuff appellant, appellant=s attitude
changed.  Appellant grabbed Guillen and pulled on him; Guillen lost his balance
and fell into the patrol car with appellant. 

Appellant then grabbed Guillen=s gun and, as
Guillen tried to back out of the car, appellant removed the gun from its
holster.  Guillen shouted AHe=s got my gun@ and appellant and
Guillen began struggling over the gun.  Guillen heard the gun=s safety
disengage.  Appellant pointed the gun towards Guillen=s lower body and
pulled the trigger.  Guillen jumped, and the bullet missed his leg by less than
an inch before lodging in the car=s back seat.  As
appellant yelled that he was Agoing to shoot it again,@ Guillen ejected
the gun=s magazine.  He
then jammed the live round already in the gun with his hand. 








Appellant continued to fight Guillen and two other officers
who had come to his aid.  During the struggle, appellant stated several times
that he wanted to speak to his mother, and he also stated that he wanted to
shoot himself.  One of the officers was eventually able to pry appellant=s fingers from the
gun, and another transported appellant to jail.  Appellant was charged in two
separate indictments with taking a weapon from a peace officer and aggravated
assault of a peace officer.  Audio of the struggle was captured on the video
recorder inside Guillen=s patrol car, and the videotape was later
played for the jury during appellant=s trial.

At trial, appellant testified that Corporal Guillen, the
complainant, began punching him while trying to place the handcuffs on him. 
Appellant got scared and tried to grab Guillen=s left hand.  When
appellant saw Guillen=s gun, he grabbed it by the barrel and
held on to it with his right hand.  While struggling over the gun, appellant
heard it go off.  He admitted that he twice said, AWatch out, I=ll shoot it again.@  Appellant
testified that he could not remember if his finger was on the trigger when the
gun went off.  He also testified that he never intended to shoot Guillen.

II.       Analysis
of Appellant=s Issues

A.      Issues
Common to Both Cases

1.       Alleged
Batson Error

In his first issue, appellant contends the trial court
erred in failing to discharge the jury panel under Batson v. Kentucky,
476 U. S. 79 (1986).  Specifically, appellant alleges that the trial court
erred in allowing the State to peremptorily strike a veniremember solely on the
basis of her race, in violation of Batson and Texas Code of Criminal
Procedure article 35.261.  We examine Batson challenges under a Aclearly erroneous@ standard of
review, viewing the evidence in the light most favorable to the trial court's
ruling.  Gibson v. State, 144 S.W.3d 530, 534 (Tex. Crim App. 2004).








Once a party raises a Batson challenge, the court
must engage in a three‑step process. First, the party opposing the
peremptory strikes must make a prima facie showing of racial discrimination and
thus carries a burden of production.  Ford v. State, 1 S.W.3d 691, 693
(Tex. Crim. App. 1999).  Second, the burden shifts to the party who exercised
the peremptory strikes to give a facially‑neutral explanation.  Id. 
Finally, the court must determine whether or not the challenging party has made
out a case of discrimination.  Id.  The burden of persuasion always
rests on the party challenging the use of the peremptory strikes.  Id. 
(citing Purkett v. Elem, 514 U.S. 765, 767B68 (1995)). 
However, the court must evaluate the reasons proffered for the strikes in light
of what it observes during voir dire and during the Batson hearing.  See,
e.g., Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002) (stating
appellate courts must give great deference to the trial courts because they
make determinations based on credibility and demeanor in connection to the Batson
hearing). 

The record does not reflect the race of the challenged
veniremember, number twenty-two, or the other panel members.  Appellant
challenged the State=s strike of the veniremember in the
following exchange:

[Defense]:    Except for Juror 22,
I=ve got comments for all of them
except 22.  I=m wondering how she ended up
getting struck - - I mean, peremptory challenged.

[State]:         She was struck by
the State, Judge.

[Defense]:    I=m asking for a race neutral
[explanation] from the State on No. 22

The Court:    Does the State have
anything?.

[State]:         Judge, the notes I
have on 22 are that I had a bad vibe during my voir dire.  She kept giving me
hostile looks and wasn=t very interested in my voir dire.

The Court:    Either side have
anything else?

[Defense]:    Judge, I would
challenge.  I saw no animosity from No. 22 at all, none to either side
including the Court.

The Court:    Well, as far as the
reason that has been provided, the State has provided race neutral reasons.

Anything else?

[State]:         Nothing else from
the State, judge.

[Defense]:    (Moves head side to
side).

* * *








The Court:    . .
. For the record, the jury has not been sworn.  For purposes of the prior
matter that was had at the bench before the jury was actually seated, the Court
finds as a preliminary matter there is not a prima facie showing the State has
exercised strikes not in a race-neutral manner.  Even if such showing was made,
the requested race-neutral explanation for the one juror, for which the
race-neutral explanation was requested, the Sate provided a race-neutral
explanation on that one particular juror. . . .

In Purkett v. Elem, the Supreme Court held that, A[t]he second step
. . . does not demand an explanation that is persuasive, or even plausible. 
[Instead], >the issue is the facial validity of the prosecutor=s explanation. 
Unless a discriminatory intent is inherent in the prosecutor=s explanation, the
reason offered will be deemed race neutral.=@  Purkett v.
Elem, 514 U.S. 765, 767B68 (1995) (quoting Hernandez v. New
York, 500 U.S. 352, 360 (1991)).  Thus, any reason offered by the State, as
long as it is facially valid and not inherently discriminatory, is sufficient
to rebut the defendant=s prima facie case of intentional
discrimination.  See id.  The defendant then has the burden of showing
that the race-neutral reasons articulated by the State were in fact a pretext
for purposeful discrimination.  See Pondexter v. State, 942 S.W.2d 577,
581 (Tex. Crim. App. 1996).    

On appeal, appellant does not assert that the prosecutor=s race-neutral
explanation was racially discriminatory.  He claims only that the reason givenCthat the
veniremember was hostile and disinterestedCwas Aincredible.@  However,
appellant never cross-examined the prosecutor or offered any evidence to show
that the State=s explanation was pretextual; appellant did nothing
more than point out the allegedly racially-struck veniremember, ask for a
race-neutral explanation, and claim that he saw no animosity exhibited by the
juror.  The court was present at the proceeding and capable of resolving the
matter.  Based on the applicable law and the record before us, we hold that the
trial court=s ruling was not clearly erroneous.  

We overrule appellant=s first issue.








2.       Altering
an Enhancement Paragraph in the Indictment

In his second issue, appellant contends the trial court
erred in permitting the State to amend the indictment, over appellant=s objection, after
the commencement of trial, in violation of Texas Code of Criminal Procedure
article 28.10(b).  See Tex. Code
Crim. Proc. art. 28.10(b) (AA matter of form
or substance in an indictment or information may also be amended after the
trial on the merits commences if the defendant does not object.@).  Specifically,
appellant contends the State=s attempt to abandon the specific date of
a prior conviction in one of the enhancement paragraphs actually amounted to an
impermissible amendment.  However, for the reasons explained below, we find
that article 28.10 does not apply to the alteration of the conviction date in
the enhancement paragraph of appellant=s indictments.

The second enhancement paragraph of the indictments alleged
a conviction for delivery of a controlled substance on November 28, 1989.  The
correct date of the conviction, however, was November 29.  Before the start of
the punishment phase, the State realized the variance in the date and moved to
alter the indictments to abandon the day of the month of the conviction. 
Appellant=s counsel objected to the alteration as an improper
post-conviction amendment of the indictments.  Over counsel=s objection, the
trial court granted the State=s request and physically crossed through
the A28@ on the
indictments, and initialed and dated the changes.  








In Brooks v. State, this Court explained that an
enhancement paragraph does not form any part of the allegations of criminal
wrongdoing and contains no elements of the offense; thus, a defendant has no
constitutional right to have a grand jury decide whether the allegation is
supported by probable cause.  Brooks v. State, 921 S.W.2d 875, 878 (Tex.
App.CHouston [14th
Dist.] 1996), aff=d, 957 S.W.2d 30
(Tex. Crim. App. 1997).  The only purpose of an enhancement paragraph is to
provide the accused with notice that the State will attempt to use a specific
conviction for enhancement of punishment.  Id.  For this reason, an
enhancement paragraph does not have to be pleaded with same degree of
particularity as the primary offense.  Id.  In affirming Brooks,
the Court of Criminal Appeals further held that, although prior convictions
used for enhancements must be pleaded in some form, they need not be pleaded in
the indictment.  Brooks v. State, 957 S.W.2d 30, 34 (Tex. Crim. App.
1997).

Because the alteration was made to a punishment-enhancement
paragraph rather than to elements of the charged offense, article 28.10 does
not apply to prohibit the alteration the trial court permitted the State to
make.  The only question is whether the discrepancy between the alleged date
and the actual date of the prior conviction operated to deprive appellant of
notice of the specific conviction the State intended to use for punishment
enhancement.  Here, the enhancement paragraph reflected an incorrect day of the
month of the prior conviction.  However, the presence of other correct details,
including the correct court, cause number, county, year, and offense, provided
appellant with adequate notice of his prior conviction.  See Davis v. State,
684 S.W.2d 201, 209B10 (Tex. App.CHouston [1st
Dist.] 1984, pet. ref=d) (holding that incorrect conviction date
in enhancement paragraph of indictment was not a fatal variance when indictment
contained correct cause number and court number in which alleged conviction for
prior offense occurred, as well as correct name of offense and description of
it as a felony).  Moreover, the State informed appellant of its intent to use
the prior conviction in its ANotice of Intention to Use Evidence
Pursuant to Texas Rules of Criminal Evidence 404, 609 and 37.07(g),@ which was served
on appellant and filed with the court several months before the start of
trial.  This document reflected the correct date of the prior conviction. 
Accordingly, appellant received all the notice to which he was entitled, and
the trial court did not err in allowing the State to alter the enhancement
paragraph to omit the incorrect day of the month of the conviction.

We overrule appellant=s second issue.

3.       Notice
of Prior Felony Conviction








In his third issue, appellant contends the trial court
erred in allowing the State to introduce a prior felony conviction into
evidence during the punishment phase of the trial, when the State failed to
give appellant timely notice as set out in the trial court=s discovery
order.  Appellant argues that under the discovery order, the State was required
to give him notice of its intent to use a prior conviction, and the notice
given was not timely.  

The discovery order appellant relies upon required the
State to allow inspection and copying of A[a]ll records of
conviction which may be admissible in evidence or used for impeachment of
defendant@ on or before ten days prior to trial.  The day trial
began, appellant=s counsel received a notice from the State
informing appellant of the State=s intent to
introduce a 1991 conviction for aggravated assault upon a correctional
officer.  At the start of the second day of trial, appellant=s counsel objected
to the State using the 1991 conviction because its notice was untimely.  The
State responded that it had learned of the conviction the night before voir
dire began, and faxed a notice to appellant=s counsel as soon
as possible.  The trial court noted that appellant had not requested a
continuance and had waited until mid-trial to bring the issue to the trial
court=s attention.[1] 
Because the State did not intend to introduce the conviction until the
punishment phase, the trial court reserved ruling on appellant=s objection until
after the State rested its case.  Later, during the punishment phase, appellant
objected when the State offered a judgment and sentence reflecting appellant=s 1991
conviction.  The trial court overruled appellant=s objection and
admitted the evidence.








On appeal, appellant contends that Athe prosecutor=s good or bad
faith was not the issue.@  However, the case law instructs
otherwise.  Generally, evidence that is willfully withheld from disclosure
under a discovery order should be excluded from evidence.  Jackson v. State,
17 S.W.3d 664, 673 (Tex. Crim. App. 2000) (citing Hollowell v. State, 571
S.W.2d 179, 180 (Tex. Crim. App. [Panel Op.] 1978)).  However, the extreme
sanction of exclusion should not be imposed absent willfulness on the part of
the State.  Osbourn v. State, 59 S.W.3d 809, 816 (Tex. App.CAustin 2001), aff=d, 92 S.W.3d 531
(Tex. Crim. App. 2002).  A Awillful@ act is one that
is Adone voluntarily
and intentionally, with the specific intent to disobey the law.@  State v.
LaRue, 108 S.W.3d 431, 434 (Tex. App.CBeaumont 2003), aff=d, 152 S.W.3d 95
(Tex. Crim. App. 2004).  If the trial court admits the disputed evidence, we
review its ruling for abuse of discretion.  Grimes v. State, 135 S.W.3d
803, 817 (Tex. App.CHouston [1st Dist.] 2004, no pet.) (citing
Ransom v. State, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994)).

The record in this case reveals no evidence of willfulness
on the State=s part.  The prosecutor explained that she did not
intend to disobey the trial court=s discovery order,
and she provided notice to appellant as soon as possible after discovering the
1991 conviction.  Appellant received the notice just before the start of trial,
but did not claim surprise or seek a continuance when he learned of it. 
Additionally, appellant has never contested the validity of the conviction, and
has not indicated any specific actions he would have undertaken had he been
given more time to prepare.  Under these circumstances, it was within the trial
court=s discretion to
deny appellant=s motion to exclude the evidence.

We overrule appellant=s third issue.

B.      Issues
Specific to the Aggravated Assault Conviction

In his fourth and fifth issues, appellant contends the
evidence was legally and factually insufficient to prove that he used or
exhibited a weapon during the commission of the offense of aggravated assault
as alleged in the indictment.  In his sixth and seventh issues, appellant
contends the evidence is legally and factually insufficient to prove that
appellant had the intent to threaten Corporal Guillen with imminent bodily
injury as alleged in the indictment.  We consider each in turn.

1.       Standards
of Review








In evaluating the legal sufficiency of the evidence, we
must view the evidence in the light most favorable to the prosecution and
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Vasquez v. State, 67
S.W.3d 229, 236 (Tex. Crim. App. 2002).  This standard of review applies to
cases involving both direct and circumstantial evidence.  King v. State,
895 S.W.2d 701, 703 (Tex. Crim. App. 1995).  Although we consider all evidence
presented at trial, we may not re‑weigh the evidence and substitute our
judgment for that of the jury.  King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).  The jury is the exclusive judge of the credibility of
witnesses and of the weight to be given their testimony, and it is the
exclusive province of the jury to reconcile conflicts in the evidence.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

In a factual sufficiency review, we must view all the
evidence in a neutral light and determine whether the jury was rationally
justified in finding guilt beyond a reasonable doubt.  Zuniga v. State,
144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  Evidence is factually insufficient
if, when considered by itself, the evidence supporting the verdict is too weak
to support a finding of guilt beyond a reasonable doubt and thus renders the
conviction clearly wrong and manifestly unjust.  Id. at 485; Vasquez,
67 S.W.3d at 236.  Alternatively, evidence is factually insufficient if the
evidence contrary to the verdict is strong enough that the beyond‑a‑reasonable‑doubt
standard cannot be met, even if evidence supporting guilt outweighs the
evidence to the contrary.  Zuniga, 144 S.W.3d at 485.  Although we have
some authority to disregard evidence that supports the verdict, we must be
appropriately deferential to the jury.  Vasquez, 67 S.W.3d at 236.  We
may not substitute our judgment for that of the jury and may not intrude upon
the jury=s role as the sole
judge of the weight and credibility of witness testimony.  Id.

2.       The
Legal and Factual Sufficiency of the Evidence Appellant Used or Exhibited a
Weapon








The State was required to prove that appellant
intentionally and knowingly threatened the complainant, Corporal Guillen, with
imminent bodily injury while Guillen was lawfully discharging an official duty,
Aby using and
exhibiting a deadly weapon, namely a firearm,@ knowing that
Guillen was a public servant.[2] 
See Tex. Pen. Code '' 22.02(a)(2),
22.02(b)(2)(B).  Appellant contends that the record fails to show that
appellant Aever exercised control over the weapon to the extent
that it can be said that he used or exhibited@ it during his
struggle with Corporal Guillen.

In McCain v. State, 22 S.W.3d 497 (Tex. Crim. App.
2000), the Court of Criminal Appeals interpreted the phrase Auses or exhibits a
deadly weapon@ in the aggravated robbery statute to mean that the
person Aemploys the weapon
in any manner that >facilitates the associated felony.=@  Id. at
502 (citing Patterson v. State, 769 S.W.2d 938, 941 (Tex. Crim. App.
1989)).  Applying that definition here, we hold that the evidence was both
legally and factually sufficient to support the jury=s finding that
appellant Aused or exhibited@ Corporal Guillen=s gun in a manner
that facilitated the associated aggravated assault.

Corporal Guillen testified that, as he and appellant
struggled, appellant was able to remove his gun from its holster, disengage the
safety, and fire it at him at close range.  Appellant threatened to shoot
again, but Guillen was able to eject the gun=s magazine and jam
the round already in the gun.  This evidence is legally sufficient to show that
appellant had sufficient control of the gun to threaten Guillen with imminent
bodily injury, despite the struggle.  Appellant offers no additional evidence
to support his factual sufficiency challenge,[3]
and, viewing all of the evidence in a neutral light, we also hold that the
evidence is factually sufficient to show that appellant Aused or exhibited@ a deadly weapon.

We overrule appellant=s fourth and fifth
issues.

3.       Evidence
of Appellant=s Intent








In his sixth and seventh issues, appellant contends the
evidence is legally and factually insufficient to show that appellant had the
intent to threaten Corporal Guillen with imminent bodily injury as alleged in
the indictment.  Specifically, appellant contends that A[t]he record
simply fails to support any finding that the appellant intended to place
[Corporal Guillen] in fear of bodily injury.@  Instead,
appellant contends, the evidence shows that he intended to commit suicide. 

Whether a defendant committed an offense with the requisite
mental state is an issue for the fact finder=s determination
and is almost always proven by circumstantial evidence.  State v. Hart,
905 S.W.2d 690, 693 (Tex. App.CHouston [14th Dist.] 1995, pet. ref=d).  Intent may be
inferred from the accused=s words, acts, or conduct and the
surrounding circumstances.  Guevara v. State, 152 S.W.3d 45, 49B50 (Tex. Crim.
App. 2004); Moore v. State, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998).

To support his argument, appellant points to the following
evidence:  (1) several officers heard appellant state that he wanted to shoot
himself; (2) Corporal Guillen testified that appellant stated several times
that he wanted to talk to his mother; and (3) appellant=s change in
attitude once he learned he was going to be handcuffed and taken to jail is
consistent with a theory of attempted suicide.  Appellant=s argument,
however, ignores other evidence that supports his conviction.  For example,
Corporal Guillen testified that appellant, just inches away, pointed the gun
directly at him and pulled the trigger.  Guillen jumped, and the bullet
narrowly missed his leg.  Appellant then threatened to shoot again, but Guillen
ejected the gun=s magazine and jammed the live round
already in the gun.  Guillen also testified that at some point during the
incident, appellant told him, AI=m going to kill
you.@  Another officer
at the scene testified similarly that he heard appellant say AI will shoot you
and me.@  The jury was
also able to hear the struggle on the patrol car=s video recorder.
Appellant himself admitted that, during the struggle, he twice said AWatch out, I=ll shoot it again.@








Corporal Guillen=s testimony that
appellant wrestled his gun out of its holster, pointed it at Guillen, fired at
him at very close range, and then threatened to fire it again is legally
sufficient evidence enable a rational jury to find, beyond a reasonable doubt,
that appellant intended to threaten Guillen with imminent bodily injury.  And,
although the record contained some evidence that appellant may have harbored
suicidal thoughts, that evidence does not overcome, or even necessarily
conflict with, the evidence supporting the jury=s finding. 
Considering all of the evidence in a neutral light, the jury was rationally
justified in finding that appellant committed the offense of aggravated assault
on a peace officer.  The evidence supporting appellant=s guilt is not so
weak or so against the overwhelming weight of the contrary evidence so as to
render the jury=s verdict clearly wrong and manifestly
unjust.  Thus, the evidence is legally and factually sufficient to support
appellant=s conviction.

We overrule appellant=s sixth and
seventh issues.

C.      Issues
Specific to the Conviction for Taking a Weapon From a Peace Officer

In two issues, appellant contends the evidence is legally
and factually insufficient to support his conviction for taking a weapon from a
peace officer.[4] 
Specifically, appellant contends the evidence is legally and factually
insufficient to prove that he had the intent to harm Corporal Guillen at the
time he took the officer=s gun, because the evidence shows that
appellant wanted to shoot himself, not the officer. 

To convict appellant, the State was required to show that
he Aintentionally or
knowingly and with force@ took or attempted to take a firearm from
a peace officer with the intent of harming the officer.  See Tex. Pen. Code ' 38.14(b). 








Appellant contends the evidence is not sufficient to show
he intended to cause harm to Corporal Guillen or a third party when he took
Guillen=s weapon:  AThe record simply
fails to support any finding that the appellant intended to harm the
complainant, as alleged in the indictment.@  Instead,
appellant argues, the evidence shows that appellant took Guillen=s gun intending to
shoot himself, and the gun discharged towards Guillen as the two struggled.  To
support this argument, appellant points to the same evidence he relied on to
challenge the intent element of the aggravated assault charge discussed above;
specifically, the testimony of the officers that they heard appellant say that
he wanted to kill himself, Guillen=s testimony that
appellant asked several times to speak to his mother, and appellant=s change in
attitude once he learned that he was going to be handcuffed and taken to jail. 

Our analysis of the evidence under this issue is
substantively the same as we have already outlined above in our discussion of
appellant=s sixth and seventh issues; therefore, we hold that
the evidence is legally and factually sufficient to support appellant=s conviction for
the offense of taking a weapon from a peace officer.  

Accordingly, we overrule appellant=s two issues
specific to the offense of taking a weapon from a peace officer.

III.      Conclusion

We overrule appellant=s issues and
affirm the trial court=s judgment.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed September 5, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  The trial court stated, AJust so the record is clear, the notice was provided
before we began.  And the court was not made aware of any objection at that
time to it, nor was there any request for continuance for additional time at
that time.@





[2]  Appellant was convicted of this offense in trial court cause no. 972564. 





[3]  We note that, although appellant admitted he said, AWatch out, I=ll
shoot it again,@ meaning Corporal Guillen=s gun, he denied that this statement meant that he
already had shot the gun once.  He also testified he was holding the gun by the
barrel, but could not remember if his finger was on the trigger.  





[4]  Appellant was convicted of this offense in trial court cause no. 972563.  In his brief for Cause No. 14-05-00145-CR,
appellant designates the legal and factual sufficiency issues as his fourth and
fifth issues, after restating the three issues common to both this appeal and
the appeal in Cause No. 14-0500144-CR.